# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-30081 |
| ) | |
| JOSE HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |

## OPINION

RICHARD MILLS, United States District Judge:

The Court addresses Defendant Jose Hernandez's Amended Motion for Compassionate Release [d/e 27].

1

Hernandez has also filed a Notice of Supplemental Authority [d/e 33] and an Emergency Supplement to Motion for Compassionate Release [d/e 34].

## I.    BACKGROUND

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Jose Hernandez moves for compassionate release based on the increased number of positive cases of COVID-19 at FCI Texarkana where he is incarcerated, Hernandez's morbid obesity, the length of time he has served for a non-violent marijuana offense, his lack of criminal history, the changes to his sentencing scheme after the First Step Act, along with his prison rehabilitation.

In August 2011, Hernandez was sentenced to 240 months' imprisonment for possession with intent to

distribute 1,344 kilograms of marijuana.  At the time, that was the statutory minimum sentence that could be imposed.  Hernandez's guideline range otherwise would have been 108 to 135 months' imprisonment.  He has been in custody since September 22, 2010 and, according to the Bureau of Prisons website, has a current projected release date of January 12, 2028.  If the changes made by the First Step Act are taken into account, Hernandez states he would likely have less than three years remaining on his sentence.

Hernandez, who is now 39-years old, reports being 6 feet 1 inches tall and weighing 415 pounds, which results in a body mass index of 54.7, meaning he is morbidly or severely obese.  The CDC states that obesity places individuals at an increased risk of severe illness from the

virus that causes COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (last visited July 19, 2021). "The risk of severe COVID-19 illness increases sharply with elevated BMI." *Id*. The Government acknowledged that Hernandez's morbid obesity constitutes an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)(i). It is uncertain whether that remains an extraordinary and compelling circumstance now that COVID-19 vaccinations are widely available to BOP inmates.

Hernandez states that he also suffers from edema and is pre-diabetic. These conditions, while not expressly listed on the CDC's website as enhancing the risk for

severe illness from COVID-19, could lead to greater risk because the more underlying medical conditions one has, the greater the risk of severe illness from COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 19, 2021).

The BOP website reports that 168 inmates and 115 BOP staff have confirmed COVID-19 positive tests. www.bop.gov/coronavirus (last accessed July 19, 2021). There are 130,449 federal inmates in BOP-managed institutions. Id. Currently, FCI Texarkana has 118 inmates and 8 staff members who are positive for COVID-19, meaning more than 70% of BOP active COVID-19 cases are at Texarkana. The website reports 538 inmates and 91

staff have recovered.  Id.  There are 1,098 total inmates at FCI Texarkana, including 922 at the FCI and 176 at the camp.    www.bop.gov/locations/institutions/tex/    (last visited July 19, 2021).

"Since before the first dose was administered by agency staff on December 16, 2020, the Bureau has been committed to making the vaccine available to all staff and inmates wishing to receive it." www.bop.gov/resources/news20210715_vaccine_200k.jsp.  The BOP website reports that 99 staff members and 740 inmates at FCI Texarkana are fully vaccinated.   FCI Texarkana is experiencing an outbreak even though most of the inmates are immunized.[1]

---

[1] Either 80.26% or 67.4% of FCI Texarkana inmates are fully vaccinated, depending upon whether the 740 who are vaccinated includes the individuals at the camp.

It is unclear whether Hernandez is fully vaccinated. Hernandez's vaccination status is important because "COVID-19 vaccines are safe and effective at preventing COVID-19, including severe illness and death." www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. The vaccines are effective against the variants, including the Delta variant currently circulating in the United States. *Id*. "COVID-19 vaccines also help keep you from getting seriously ill even if you do get COVID-19." www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. Presumably, Hernandez at least has had the opportunity to get vaccinated if he wished.

Hernandez alleges the factors under 18 U.S.C. § 3553(a) support compassionate release.  Moreover, he has only two disciplinary infractions during his current prison term.  This includes a 2019 infraction for possession of a hazardous tool, which Hernandez states was a cell phone, and a 2013 infraction for assault with no bodily injury. Hernandez states that he has taken several educational courses while in BOP custody, including the completion of an apprenticeship in electrical automotive.   The Compassionate Release Recommendation Memorandum provides he has completed nine educational courses during his current prison term, including a related trades apprenticeship and quality control apprenticeship. Hernandez further claims that the changing societal norms

and views toward marijuana warrant a sentence reduction when he has already spent more than a decade in prison for distribution of a substance that is increasingly legal under state laws across the country.  He has one prior conviction and no history of violence or firearms.

The Government claims the motion should be denied based on Hernandez's criminal history which consists of a prior federal marijuana trafficking conviction.  He committed the current offense while on supervised release for his prior conviction.

At the time of sentencing, Hernandez faced a 20-year statutory mandatory minimum.  Following the passage of the First Step Act, Hernandez's statutory mandatory minimum sentence and guideline range today for

possession with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 841(b)(1)(A) would be 15 years.

## II.  DISCUSSION

## (A)

Under the First Step Act, signed into law on December 21, 2018, defendants may now file motions for compassionate release after first exhausting administrative remedies within the BOP.  *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary and compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A). If properly invoked by the Government, the exhaustion requirement must be enforced. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

There is no dispute that Hernandez met the statutory exhaustion requirement.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a)

when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

Because the Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release, there is no "applicable" policy statement concerning the expanded compassionate-release provision. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). "The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id.* Until U.S.S.G. § 1B1.13 is amended, there is not an "applicable" policy statement for

courts to rely on in considering prisoner-initiated applications for compassionate release. *See id*. at 1181.

The Seventh Circuit recently determined that the district court's discretion to consider non-retroactive changes in the law "is inherent in the compassionate release statute and process." *United States v. Black*, 999 F.3d 1071, 1076 (7th Cir. 2021).

In *Black*, the court considered the First Step Act's non-retroactive changes to 18 U.S.C. § 924(c) and what it meant for district courts considering motions for compassionate release. The court explained:

> Congress's policy choice not to make the change to
> § 924(c) categorically retroactive does not imply that
> district courts may not consider those legislative
> changes when deciding individual motions for
> compassionate release like this one. To the contrary,
> the purpose of compassionate release under § 3582 is

to allow for sentencing reductions when there is no statute affording such a reduction but where extraordinary and compelling reasons justify the relief.

*Id.* at 1075.

The Seventh Circuit concluded that because the district court did not consider a statutory change that "reflects a substantially different view by Congress about how to punish violations of § 924(c)," it was not apparent that the district court recognized the full extent of its discretion in considering the defendant's compassionate release motion. *See Black*, 999 F.3d at 1076.

More recently, the Seventh Circuit determined that the change to § 924(c) cannot alone "constitute an extraordinary and compelling reason for a sentence

reduction." *United States v. Thacker*, 2021 WL 2979530,

at *6 (7th Cir. July 15, 2021). The court explained:

> The proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons proceeds in two steps. At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c). Upon a finding that the prisoner has supplied such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*Id*.

Based on the reasoning of *Black* and *Thacker*, this

Court may not consider at step one the fact that the

mandatory minimum and resulting guideline range as to

Hernandez is now 180 months, instead of the 240-month imprisonment term he received in 2011. If the Defendant provides an extraordinary and compelling reason warranting a sentence reduction, the statutory change can be part of the second step of the analysis along with any relevant sentencing factors.

(B)

The Court noted earlier that the record does not indicate whether Hernandez is vaccinated. It would appear that he is vaccinated or has had the opportunity to be vaccinated. If Hernandez is vaccinated, it is unlikely he would become seriously ill if he were to contract COVID-19. Because of the widely available vaccine, therefore, the Court is no longer able to determine the COVID-19

outbreak at FCI Texarkana along with Hernandez's severe obesity constitute extraordinary and compelling reasons for a sentence reduction. *See United States v. Broadfield*, 2021 WL 3076863, at *2 (7th Cir. July 21, 2021) (stating that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release").

The Court does find that extraordinary and compelling reasons exist for a sentence reduction.  Hernandez was convicted of an offense involving distribution of a large amount of marijuana.  Although marijuana is still a controlled substance federally, 18 states have fully legalized marijuana and a number of others have

decriminalized marijuana. www.disa.com/map-of-marijuana-legality-by-state (last visited July 22, 2021). More than 30 states no longer punish marijuana as a criminal offense. *Id*. Ten years ago, when Hernandez was sentenced, no states had legalized marijuana. The Court concludes that the changing societal norms and attitudes towards marijuana in recent years constitute an extraordinary and compelling reason to consider a sentence reduction.

Applying the statutory sentencing factors, the Defendant was convicted of possession with intent to distribute a large amount of marijuana. It was his second federal conviction for that crime. In 2005, he was sentenced to 60-months imprisonment for his first

marijuana distribution conviction.    He committed the second offense while on supervised release.

At the time Hernandez was sentenced, the law provided that a 20-year imprisonment term was necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.    Congress has since determined that a 15-year minimum term achieves those same sentencing goals.

As for deterrence, a 5-year prison term did not deter Hernandez from engaging in the same type of conduct.    It is possible that a 20-year term will have more of a deterrent effect.    A lesser but still lengthy term of 15 years might also achieve that sentencing purpose.    The same can be said for

protection of the public from further crimes of the Defendant.

Regarding protection of the public, the distribution of large amounts of drugs can endanger the community. Society is the victim of his offense. However, the trafficking of marijuana is not as serious as the trafficking of other drugs, such as heroin or methamphetamine. Additionally, there is no evidence Hernandez has ever used a firearm while distributing marijuana.

Another factor involves providing Defendant "with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). As noted, Hernandez has taken a number of educational and vocational programs.

Hopefully, these courses and programs have prepared him to succeed upon release. It is unknown whether additional education or training would be beneficial. It appears that Defendant has made significant efforts to rehabilitate while in BOP custody.

The Court presumes Hernandez is receiving quality medical care while in custody. Of course, he can receive quality medical care when released. The Government notes Hernandez's weight has increased by 30 pounds in recent months despite being counseled by BOP to address his morbid obesity through diet, exercise and a healthier lifestyle. As Hernandez states, however, his menu options are significantly limited to what is served at FCI Texarkana. The ability to exercise is also restricted and, at

times, has been non-existent because of the lockdowns associated with COVID-19.

Hernandez has a very good disciplinary record while in prison, having received only two disciplinary infractions after a decade in BOP custody. The more serious infraction--assault with no bodily injury--occurred nearly a decade ago.

As noted earlier, the Defendant's statutory mandatory minimum would be 15 years imprisonment, resulting in a 180-month guideline range. If there was no statutory minimum, Hernandez's guideline range would be 87 to 108 months, based on a total offense level of 27 and criminal history category of III.

It is extremely likely that the Court today would sentence Hernandez to 180 months imprisonment, based on the otherwise applicable guideline range and the fact that the Court previously imposed the statutory minimum. The only aggravating factor was Hernandez's prior conviction and the fact that this offense was committed while he was on supervised release.

The Court is unable to conclude that compassionate release is warranted under the circumstances of this case. However, the Court will grant the motion to the extent that Defendant seeks a sentence reduction.

## CONCLUSION

For all of these reasons, the Court concludes that a sentence reduction to 180 months is warranted. Such a

sentence is sufficient under the circumstances. A sentence of 240 months is greater than necessary. The Court finds that extraordinary and compelling reasons along with the applicable sentencing factors justify this relief.

Ergo, the Motion of Defendant Jose Hernandez for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and The CARES Act [d/e 27] is DENIED in part and GRANTED in part.

It is Denied to the extent that Defendant seeks compassionate release.

It is Granted to the extent that Defendant seeks a sentence reduction.

Defendant Jose Hernandez's imprisonment term is reduced from 240 months to 180 months.

All other aspects of the Defendant's sentence shall remain the same.

The Clerk will terminate the Defendant's *pro se* motion for compassionate release [d/e 25].

ENTER: July 23, 2021

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge